Peoic, J.
It is claimed that the judgment against the plaintiff in error should be reversed for several reasons.
I. Because the contract of July 10, 1851, is illegal and void as being in restraint of trade.
This contract, as appears from its recitals and the pleadings in the case, was entered into to compromise a suit by said Lowden, then pending in the superior court of Cincinnati, to recover damages resulting from a laboratory owned and operated by Grasselli, at a specified locality in said city, in the immediate vicinity of said Lowden’s residence, and also to prevent the institution by said Lowden, of any further actions for the alleged nuisance for five years next thereafter, and bound the said Grasselli to discontinue the laboratory business upon the premises specified, at the expiration of said five years, and to not suffer or permit it to be operated by others after that period.
Lowden did not seek, by said agreement, to obtain a mo nopoly or prevent competition in a trade or employment prosecuted by him, but merely to protect himself in the full, free and healthful enjoyment of his own residence. All the instances in which contracts in restraint of trade have been held illegal and void, so far as we can discover, are cases in which the restrictive stipulations had for their object the attainment of such monopoly or freedom from competition, and not cases like the present, where the only purpose of the covenantee was to protect himself and family in the healthful and comfortable enjoyment of their place of residence. It is difficult to see why public policy should not favor rather than condemn such a contract, where the partial restraint is not the primary object, but a mere incident of the agreement. And it would seem that the legal efficiency of such an agreement should be determined by the rules applicable to contracts generally, and not to contracts which are said to contravene public policy. This view of the contract seems to have been taken in the court below (Cincinnati Weekly Law Gazette, Nov. 13, 1858), and is worthy of much consideration. But we do not deem it necessary to adopt it in this case, as, in our judgment, the contract, tested by the rules *356 applicable to agreements in restraint of trade, is one which the law must still enforce. These rules are said to be — 1. The restraint must be partial only. 2. It must be founded upon a valuable consideration; and 3. It must be reasonable, and not oppressive. Lange v. Werk, 2 Ohio St. Rep. 528, and cases cited.
1. The restraint imposed was only partial, being confined to but one lot in the city, leaving all other portions of the city and the surrounding country open to the enterprise of the covenantor.
2. It was also founded upon a valuable consideration. The compromise and withdrawal of the suit then pending and the conceded privilege of continuing the obnoxious business at that particular locality five years longer, without suit or molestation by the plaintiff, constituted a valuable and sufficient consideration to support such agreement, even if it be in partial restraint of trade, which in this respect stands upon the same footing as other contracts. Green v. Price, 13 Mees. & Wells., 607; Hitchcock v. Coker, 6 Ad. & El. 456-7. It must be valuable, but need not be adequate. Such only as is essential to support any contract not under seal. Ib.
The counsel for the plaintiff in error insists that there was no consideration in fact, because, under the case made in the original petition, the plaintiff could not have recovered, and therefore parted with nothing by the discontinuance of his suit, nor by the permission to continue a business against which he could not legally object. The amended petition avers that at the date of the suit for the nuisance, the said Lowden was in possession of and resided upon real estate in the immediate vicinity of the laboratory of Grasselli, and that said action was brought and prosecuted in good faith, and this is not controverted by the answer. It is also evident from the terms and recitals of the agreement, that Grasselli was at least apprehensive that the suit was well founded, or could be made so by amendment, and might result disasterously to him. It is obvious, therefore, that there was then, a controversy between the parties, of which the issue was regarded by both as at least doubtful, whatever may be the present opinion of *357 Grasselli, or of his counsel; and this constitutes a sufficient consideration for the covenant. 1 Parsons on Contracts, 364, and cases cited.
3. Was the restraint reasonable and not oppressive? The reasonableness of the restraint here spoken of, has no reference to its effect upon the rights and interest of the covenantor as such, but solely to'its effect upon the rights of the covenantee and the rights and interests of the public as distinguished from those of the covenantor. Thus in Horace v. Graves, 7 Bing. 743, Ch. J. Tindal in remarking'upon this requirement, says: “We can not see how abetter test can be applied to the question, whether reasonable or not, than by considering whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is' given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party, can be of no benefit to either; it can only be oppression, and if oppression, it is in the eye of the law unreasonable. Whatever is injurious to the interest of the public is void on the ground of public policy.”
So, too, Lord Campbell, in delivering the opinion of the court in Fallis v. Fallis, 1 Ellis & Blackburn, 410, after alluding to the case of Mitchell v. Reynolds, 1 P. Wms. 192, in which it is said that “ whereon such contract slat indifferenter, and for aught appears, may be either good or bad, the law presumes it prima facie to be bad,” remarks : “But, according to the tenor of the later decisions, the contract is valid, unless some restriction is imposed beyond what the interest of the plaintiff requires; and his interest has been considered to extend very widely. In respect of time, the restriction may be unlimited; and though, in respect of space, there must be some limit, yet contracts have been supported when the area of exclusion was apparently greater than the area of the plaintiff’s practice.”
So, too, in 7 Bing, supra, it is said on page 744, “ that unless the case was such that the restraint was plainly and obviously unnecessary, the court would not feel itself justified in interfering.” .
*358 It is clear from these authorities, that if the restraint imposed by the agreement of July 10, 1851, is not greater than the interests of Lowden required, it can not be avoided as contravening public policy. There was no restraint whatever as to time. Grasselli might, consistently with its restrictions, continue the business on the same premises for the next five years and after that period, in any other portion of the city or surrounding country, if he desired to do so.
The only question which remains in this branch of the case is, whether the restraint imposed is greater than the interests of Lowden required ?
Lowden was the possessor of a residence in the immediate vicinity of the laboratory of Grasselli, which was devoted to the manufacture of “ certain chemicals” thereby generating certain noxious vapors, and believing he had the right to recover of Grasselli for the damages thereby sustained, he in good faith commenced and prosecuted an action to recover damages for the nuisance. We are not advised of the particular averments of the declaration, nor is it important that we should know them. It is very certain, that under some circumstances, such suit might be sustained, and if the necessary facts were not properly set forth, they might have been brought into the record by amendment. This suit Lowden discontinued and stipulated to forbear instituting any other actions to recover for said nuisance for five years thereafter, as a consideration for the agreement of July 10th, 1851. We have adjudged the consideration sufficient, the interest of Lowden in contracting for the restriction is manifest, and the restriction imposed does not plainly and obviously appear to extend beyond what the interest of Lowden required. So that the contract of July 10th, 1851, whether tested by the rules applicable to contracts generally, or those peculiar to contracts in restraint of trade, is one which the law should enforce.
II. It is insisted that the judgment must be reversed, because it appears from the record, that Lowden has no interest in the cause of action.
The amended answer affirms that Lowden at the time of filing his amended petition (June 9,1857), “ was not the owner of the *359 real estate described in the original action, and has no longer such interest therein, as entitles him further to prosecute the the suit for damages,” etc.
This answer does not deny but that Tie was such owner, when the orginal suit was commenced and the agreement executed, nor but that he retained such ownership until long after the commencement of the present suit, nor does it controvert the averment of the amended petition, that, at the commencement of the nuisance suit, Lowden resided, thereon, ana still continues to reside thereon. It is difficult to perceive how this cessation of ownership, if true, the other averments be.ing admitted, co.uld bar a recovery under the contract of July 10th, 1851, for liquidated damages accruing prior to the alleged change of .ownership, or how a right to compensation for injuries to the past enjoyment of property, is lost by a subsequent sale or abandonment of the possession. Non constat but that the breach of covenant itself, compelled him to dispose of the property or abandon its possession. Were the suit for unliquidated damages even, it would be for injuries to the past and not the future occupancy of the premises, and recoverable though the ownership had terminated.
III. The next defense set up, for overruling which, it is claimed the judgment is erroneous, is, that the answer shows that the contract, according to its true intent and meaning, had been fully performed.
The covenant of the defendant below was this: “And the said Grasselli hereby agrees that at the end of the aforesaid term of five years, he will entirely discontinue the said laboratory business, on the said premises, described in the declaration in the above suit.”
The breach is, that he did not discontinue the said laboratory business at the time specified.
The performance'alleged is, not that he did discontinue the said laboratory business as in terms he agreed to, but that he has made such changes and improvements in the mode of conducting it, that his continuance of it, since the time, has been in no manner injurious to the plaintiff.
The proposition to be established is, that such a modifica *360 tion of the business is equivalent, in law, to its discon iinuance.
The argument in support of this objection is extremely specious. It is, that the plaintiff below, by the demurrer to the answer, has admitted that all the objections which he made in the original suit to the operations at the laboratory, have been entirely removed by numerous and expensive alterations made by Grasselli in the manner of operating the same, thereby rendering the business entirely harmless and unobjectionable. And it is insisted, that by these changes and alterations, Lowden has obtained all he can in good conscience require^ and should therefore suffer and permit Grasselli to continue a business profitable to himself, advantageous to the public, and in no wise hurtful to the defendant in error. In short, that these admitted facts show a fair, reasonable, and legal performance of the contract by Grasselli.
The contract provides for an entire discontinuance of the business on the specified premises, at the end of five years from its date, and not for such changes in the manner of operating the laboratory as should remove all just cause of complaint. To attain this end, desired by Lowden and agreed to by Grasselli, Lowden not only discontinued the action then pending, but consented to submit to the annoyance five years longer. This discontinuance may have been required by Lowden, to obviate the precise state of things which Grasselli is now desirous to inaugurate — a continued controversy as to whether the works, owing to changes made therein from time to time, was still obnoxious to the same objection. Be this as it may, the language is clear and explicit, and the consideration, as we have seen, is sufficiently ample to support it. That the owner of land may, in the exercise of his complete dominion over it, upon a valuable consideration, part with his right to use it for a specified purpose, is now too well settled to be disputed.
The parties mutually agreed upon a certain end to Le accomplished — the abatement of a nuisance ; and they also specified the means for its accomplishment — the entire discontinuance of the business on the premises of Grasselli; and we *361 are not at liberty now to impose other terms, or recognize a substitute for that expressly agreed upon by the parties. The contract was one they might 'lawfully make, and we can neither change nor ignore it.
IV. Lastly, did the court below err in treating the $3000, specified in said agreement, as liquidated damages, and rendering judgment thereon without the intervention of a jury ?
The agreement itself so denominates it, but this is by no means conclusive ; for it is, after all, a question of intention, to be gathered from the whole instrument, its language and subject matter, and to a great extent, therefore, must depend upon its own peculiar circumstances. It is apparent from the whole instrument, that the parties sought thereby to compromise and settle, not only the suit then pending, but also to avoid the neeessitj^ of any. future litigation as to the laboratory and its effect upon the interest of Lowden, and it is hardly reasonable to suppose they would leave the whole question still open and to be gone over with, to determine the amount of damages to which Lowden was entitled, for the past and future operating of the laboratory ; thus, in effect, postponing the entire controversy for five years to come; and in this view, the express stipulation in the agreement has much significance. It was apparently designed as an adjustment of the damages, present and prospective, resulting to Lowden, which damages were altogether uncertain and conjectural. Its payment is made to depend solely upon a failure to entirely discontinue operating the laboratory within five years from the date of the agreement, and not upon the breach of any other stipulation, nor upon a general failure to perform. These considerations, under the authorities, clearly indicate that the sum stipulated in the agreement is to be regarded as liquidated damages, and not as a penalty. 2 Parsons on Contracts, 434-5; Lange v. Werk, 2 Ohio St. Rep. 519; Sedgwick on Damages, 421-2.
The case of Berry v. Wisdom, 3 Ohio St. Rep. 244, to which we have been referred, does not in any degree conflict with this determination. The agreement in that case was “ for the performance of several things, and a gross sum ($200) *362 was made payable upon a breach of the contract; and some of the things to be performed are of less importance than others, and the damages sustained could be easily ascertained ; ” in which case it was held, “ that the gross sum was not intended to be liquidated damages,” while in the case at bar the stipulated damages are made payable upon the breach of one particular covenant only, upon which the damages are entirely uncertain and indeterminate.

Judgment affirmed.

Scott, O.J., and Sutliee, Gholson, and Brinkerhoee JJ., concurred.